UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

SUSAN ZELLICK, on behalf of herself and
all others similarly situated,

**05 CV** No. **2601**

Plaintiff,

--against--

HOWARD W. LUTNICK, LEE AMAITIS,
CANTOR FITZGERALD SECURITIES,
CANTOR FITZGERALD L. P., CF GROUP
MANAGEMENT INC., and eSPEED, INC.,

Defendants.

-------------------------------------------------------x

**CLASS ACTION
COMPLAINT**

**JURY TRIAL
DEMANDED**



Plaintiff Susan Zellick ("Plaintiff"), individually and on behalf of all other persons

similarly situated, by her undersigned attorneys, upon information and belief, based upon, *inter*

*alia*, the investigation of counsel, which includes, among other things, a review of public

announcements made by defendants, Securities and Exchange Commission ("SEC") filings made

by defendants, press releases, court papers, and media reports, except as to the paragraph

applicable to plaintiff which is alleged upon personal knowledge, alleges on information and

belief as follows:

## SUMMARY OF ALLEGATIONS

1.      This class action is brought on behalf of all persons who purchased the securities

of eSpeed, Inc. ("eSpeed" or "the Company") during the period from August 12, 2003 to July 1,

2004 (the "Class Period"). During the Class Period, the defendants touted eSpeed as an

unmitigated success story, a company which had achieved record revenues and earnings and,

most importantly, had established an infrastructure and business model that made it the market

leader in the high-volume automated trading of government securities and foreign exchange.  In repeated press releases, the defendants represented that the eSpeed business model was in place and performing as anticipated.   Unbeknownst to plaintiff and the class, the true facts were as follows:

      a.     eSpeed was not successfully competing with ICAP, its chief competitor;

      b.     eSpeed's market share was declining;

      c.     eSpeed's products (which it had touted as uniquely innovative) were increasingly fungible and subject to price competition; and,

      d.     eSpeed's pricing model was not succeeding in responding to market conditions, and in fact was driving customers to ICAP, the Company's principal competitor.

Defendants and  other eSpeed insiders disposed of substantial blocks of eSpeed shares as eSpeed's share price rode high on the wave of continuing good news about eSpeed's business and prospects.

2.     On May 10, 2004, the Company issued a press release announcing the interim appointment of Jay Ryan as Chief Financial Officer, replacing Jeffrey Chertoff who was resigning to "pursue other opportunities."

3.     On July 1, 2004, eSpeed shocked the market by admitting to "erosion of [its] market position" and substantially lowering its projected earnings per share for 2Q 2004 from the $0.19-$0.20 guidance that defendants had reaffirmed as recently as May 4, 2004 to $0.15-$0.16 per share.  In reaction to this about-face, eSpeed's share price plummeted from an opening price $17.73 on July 1 to close at $11.39 on July 6, 2004- a drop of over **35%** in only two trading days.

## JURISDICTION AND VENUE

4.     The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), (15 U.S.C. §§ 78j(b) and 78t(a)), and Rule 10b-5 (17 C.F.R. §240.10b-5).

5.     This Court has jurisdiction over the subject matter of this action pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. § 1331.

6.     Venue is proper in this District pursuant to §27 of the Exchange Act, 15 U.S.C. § 78aa and 28 U.S.C. § 1391(b).  The issuer, eSpeed, has its principal place of business in this District. Many of the acts and transactions alleged herein, including the preparation and dissemination of materially false and misleading information, occurred in substantial part in this District, and the corporate defendants reside in this District.  eSpeed shares were traded on the Nasdaq National Market in this District at all times relevant hereto.

7.     In connection with the acts, conduct and other wrongs alleged in this complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchanges.

## PARTIES

8.     Plaintiff Susan Zellick, as set forth in the certification annexed hereto as Exhibit 1, purchased eSpeed stock  at artificially inflated prices during the Class Period and has been damaged thereby.

9.     Defendant eSpeed is a Delware corporation having its principal place of business at 135 East 57th Street, New York, New York.  eSpeed  develops and deploys interactive vertical

3

electronic marketplaces and related trading technology which offers traders access to liquid, efficient and neutral financial markets. As of September 3, 2004, eSpeed had 32,484,164 shares of Class A common stock and 23,889,270 shares of Class B common stock outstanding. The eSpeed Class A common shares trade on the Nasdaq National Market System. The eSpeed Class B shares do not trade.

   10. Defendant Howard W. Lutnick is the Company's Chairman and Chief Executive Officer and its principal spokesman. Defendant Lutnick joined defendant Cantor Fitzgerald, L.P. ("CFLP"), which directly and indirectly controls eSpeed (as described below), in 1983 and has served as President and Chief Executive Officer of Cantor since 1992. Defendant Lutnick's company, CF Group Management, Inc., is the managing general partner of Cantor.

   11. Defendant Lee Amaitis is the Vice Chairman, Global Chief Operating Officer of eSpeed, Inc. and a director. Defendant Amaitis has been Executive Managing Director of eSpeed International Limited since December 1999. Defendant Amaitis has been President and Chief Executive Officer of Cantor Fitzgerald International and Cantor Fitzgerald Europe since March 1995.

   12. Defendant Cantor Fitzgerald Securities ("CFS") is a broker-dealer registered with the Securities and Exchange Commission and a member of the NASD. It is the controlling shareholder of eSpeed by virtue of its ownership of 21.2 million eSpeed Class B shares. It has power to direct the actions of the Company and to elect its Board.

   13. Defendant Cantor Fitzgerald L. P. (CFLP") is the managing partner of CFS. It has the power to direct the actions of CFS, and therefore those of eSpeed.

4

14.     Defendant CF Group Management Inc.  ("CFGMI") is the managing partner of CFLP, and it has the power to direct the actions of CFLP and CFS, and those of eSpeed. Defendant Lutnick is CFGMI's President and sole shareholder.

15.     During the Class Period, Defendants Lutnick and Amaitis (the "Individual Defendants"), as senior executive officers and directors of eSpeed, and defendants CFS, CFLP and CFGMI, were privy to material non-public information concerning eSpeed's  business, finances, products, markets and present and future business prospects via access to internal corporate documents, attendance at management and Board of Directors meetings and committees thereof, and reports and other information provided to them in connection with their duties.

16.     Because of their possession of such information, the Individual Defendants knew or recklessly disregarded the fact that the Company's public statements and SEC filings contained material misstatements and/or omissions.

17.     As officers and controlling persons of a publicly-held company whose securities are registered with the SEC pursuant to the Exchange Act and are publicly traded, the Individual Defendants had a duty to disseminate accurate and truthful information promptly with respect to the Company's financial condition and performance, and product development, and to correct any previously-issued statements which had become materially misleading or untrue, so that the market price of the Company's publicly traded securities would be based upon truthful and accurate information.  The Individual Defendants' material misrepresentations and omissions during the Class Period violated these specific requirements and obligations.

## CLASS ACTION ALLEGATIONS

18.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all persons who purchased or otherwise acquired the securities of eSpeed during the period from August 12, 2003 to July 1, 2004 (the "Class Period"), and who were damaged thereby. Excluded from the Class are defendants, the officers and directors of the Company, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

19.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, eSpeed 's securities were actively publicly traded. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by eSpeed or its transfer agent and may be notified of the pendency of this action by mail, using the forms of notice similar to those customarily used in securities class actions.

20.     Plaintiff's claims are typical of the claims of the members of the Class. All members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

21.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

22.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

a.     whether the federal securities laws were violated by defendants' acts as alleged herein;

b.     whether statements made by defendants to the investing public during the Class Period misrepresented material facts about the business, operations and products of eSpeed; and,

c.     to what extent the members of the Class have sustained damages and the proper measure of damages.

23.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## SUBSTANTIVE ALLEGATIONS

A.   eSpeed's Share Price "Rides High" on Continued Favorable Reported Financial Results and the Company's Positive Statements About Its Products and Market Position.

24.   On August 12, 2003, the first day of the Class Period, the Company issued a press release touting its Second Quarter 2003 performance entitled:

> eSpeed Reports Second Quarter 2003 Fully Taxed Operating EPS of $0.15 and GAAP EPS of $0.14
>
> Pre-tax Operating Earnings per Share of $0.25 Increases 92 Percent and Revenues Grow 28 Percent Year over Year
>
> Net Operating Margins Expand to over 35 Percent
>
> Company Significantly Improves Outlook for Full Year 2003

In the press release, eSpeed reported that for the Quarter ended June 30, 2003, eSpeed had revenue of $39.1 million, and fully electronic revenue of $27.5 million. The Company reported earnings of $8.3 million, or $0.15 per share.

Defendant Lutnick was quoted as follows:

> Our year-over-year pre-tax operating earnings per share growth of 92 percent demonstrates the success of our business model. Just over a year ago we established our growth strategy, and we are delivering on that commitment to shareholders. We are consistently improving our profitability, this quarter delivering 35.5 percent operating margins, compared to the 29.6 percent reported last quarter, and the 24.1 percent reported a year ago.

Defendant Amaitis was quoted as follows:

> The record US budget deficit and corresponding debt issuance have improved the market in which eSpeed operates. We believe that the increased US Treasury issuance, which began in the middle of the second quarter, is indicative of the expanded US Treasury market that is at the heart of eSpeed's core business. As the leader in US

8

Treasuries, eSpeed is uniquely positioned to benefit from the tremendous opportunities created by this volume and issuance growth.

Defendant Lutnick further stated:

> The tremendous growth in the US Treasury market and the success of our price improvement (PI) software in the second quarter resulted in a 15 percent sequential increase in both eSpeed's revenues and fully-electronic volume. Our increased guidance for the third quarter is based on our expectation that we will improve our market position by outperforming the Federal Reserve US Treasury volumes and by realizing continued traction in our price improvement business, and we have already seen these improvements during the month of July. We believe our unique leadership position, at an unprecedented time of record issuance in the US Treasury markets, coupled with our ability to leverage our technology enhancements, leave us extremely well-positioned for growth throughout the remainder of 2003 and beyond.

25.    On August 23, 2004, the price of eSpeed stock rose to from $22.15 from $19.95

on volume of more than 2 million shares.


26.    On November  12, 2003, the Company issued a press release touting its Third

Quarter 2003 performance entitled:

> eSpeed Reports Record Third Quarter 2003 Fully Taxed Operating EPS of $0.19 and GAAP EPS of $0.17
>
> Pre-tax Operating Earnings per Share of $0.31 Increase 94 Percent and Quarterly Revenues Grow 34 Percent to $44 Million Year over Year
>
> Pre-tax Operating Margins Expand to 40 Percent
>
> Company Expects  Strong Results for Full Year 2004, Guiding Fully Taxed Operating EPS of $0.80-0.84

In the press release, the Company reported revenues for the third quarter 2003, ended September 30, 2003, of $44.3 million. Fully electronic revenues increased to $32.3 million. Fully electronic volume for the third quarter 2003 was $9.6 trillion. The Company reported fully taxed operating income of $10.8 million, or $0.19 per share.

Defendant Lutnick was quoted as follows:

> Our strong results this quarter were primarily based on our unmatched position as the leading electronic platform in the US Treasury market. eSpeed's market position dramatically improved as evidenced by both our volume growth outpacing that of the Federal Reserve US Treasury average daily volumes as well as the success and continued traction of our Price Improvement (PI) product enhancement. During the third quarter, we saw increases in both the number of PI users as well as the number of transactions executed using Price Improvement.

Defendant Amaitis was quoted as follows:

> Our foreign exchange product has received excellent customer feedback, and we believe it has the potential to transform the foreign exchange market by increasing efficiency and broadening market participation. We remain on target with the roll-outs of both our mortgage backed securities and interest rate swaps products which will be on traders' desktops by the end of the year.

Defendant Lutnick was further quoted as having said:

> With impressive results so far in 2003, we are well positioned to continue our growth in 2004. We expect 2004 will be characterized by continued US Treasury market issuance with additional US Treasury benchmark issues being added, further traction in our Price Improvement and Contingent Order product enhancements as well as new applications for each of these product enhancements, and a reasonable expectation of traction in our Foreign Exchange, Equities and other new products. We look forward to extending our solid leadership position into 2004 and beyond.

27.    On February 9, 2004, the Company publicly announced results for the 4th Quarter of 2003, ended December 31, 2003, and reiterated guidance for 2004, in a press release entitled:

> eSpeed Reports Fourth Quarter 2003 GAAP and Fully Taxed Operating EPS of $0.15
>
> Fourth Quarter Pre-tax Operating Earnings per Share of $0.25 Increase 56 Percent and Quarterly Revenues Grow 20 Percent to $39 Million Year over Year
>
> Company Reiterates Strong Guidance for Full Year 2004

28.    In the February 9, 2004 release, the Company reported revenues of $39.2 million and fully electronic revenues of $27.7 million, and earnings of $8.6 million, or $0.15 a share. The release further stated as follows:

> The Company is maintaining its previously stated guidance for the full year 2004. eSpeed continues to expect to generate revenues in excess of $185 million and expects its pre-tax operating margins to exceed 41 percent for the full year 2004. eSpeed anticipates that its incremental margins will exceed 75 percent for the full year 2004. Operating earnings after tax for 2004 are expected to be in a range of $0.80 to $0.84 per diluted share. This guidance is based on the Company's expectations that average daily Federal Reserve US Treasury volume will be between $490 and $510 billion for the full year 2004.
>
> For the first quarter 2004, eSpeed expects operating earnings to be in the range of $0.18 and $0.20 per share diluted and after-tax. This guidance is based on the Company's expectations that the average daily Federal Reserve US Treasury volume will be between $480 and $500 billion for the first quarter 2004.

Defendant Lutnick was quoted as follows::

> For eSpeed, 2004 will be characterized by the increasing growth in the US Treasury market overall and eSpeed's leadership position in this market, the continued introduction and adoption of enhancements to our software and the initial roll out of new products to be traded and leveraged across the eSpeed platform.

We are encouraged by the strong foundation we have built, as we position ourselves for further growth in the future.

29.    On May 3, 2004, the Company issued a press release entitled :

Espeed Reports Strong First Quarter 2004 Fully Taxed Operating EPS of $0.19 and GAAP EPS of $0.18

First Quarter Pre-tax Operating Earnings per Share of $0.31 Increase 72 Percent and Quarterly Revenues Grow 31 Percent Year over Year to $44.6 Million

Company Reiterates Guidance for Full Year 2004

30.    The Company reported revenues of $44.6 million and fully electronic revenues of $30.5 million for the first quarter 2004 ended March 31, 2004.   eSpeed's earnings for the quarter were $10.7 million, or $0.18 per share.

Defendant Lutnick was quoted as follows:

We are proud to have reported strong top and bottom line results this quarter. Our pre-tax operating margin of over 40 percent for the first quarter clearly demonstrates the strength and leverage of our business model."

Defendant Amaitis was quoted as follows:

The continued success of our Price Improvement product enhancement was illustrated in the solid growth we saw this quarter in both revenues and volumes. We will continue to add value to our clients' execution capabilities with the introduction this quarter of our product enhancement Better Fill. We are excited to be able to offer additional proprietary trading tools that can improve the quality of our customers' trade executions and their profitability.

*      *      *

We are aggressively launching new products including repos, and while we are in the early stages of these initiatives, we are pleased to offer increased transparency into our new product volumes. As expected, no single new product has yet reached traction, but we are encouraged by our results over the last two quarters.

12

The May 3, 2004 press release further stated as follows:

> The Company is maintaining its previously stated guidance for the full year 2004. eSpeed continues to expect to generate revenues in excess of $185 million and expects its pre-tax operating margins to exceed 41 percent for the full year 2004. eSpeed anticipates that its incremental margins will exceed 75 percent for the full year 2004. Operating earnings after tax for 2004 are expected to be in a range of $0.80 to $0.84 per diluted share. This guidance is based on the Company's expectations that average daily Federal Reserve US Treasury volume will be between $490 and $510 billion for the full year 2004.
>
> For the second quarter 2004, eSpeed expects operating earnings to be in the range of $0.19 to $0.20 per share diluted and after-tax. This guidance is based on the Company's expectations that the average daily Federal Reserve US Treasury volume will be between $490 and $510 billion for the second quarter 2004.

31.     On May 4, 2004, eSpeed shares closed at $18.22 up from the close on May 3, 2004, of $17.43, on volume of 634,000 shares.

32.     On May 4, 2004, the defendants held an analysts conference.  In the conference, defendant Amaitis referred to eSpeed's chief competitor ICAP's acquisition of BrokerTec, and the agreement by which BrokerTec capped commissions, and stated:

> The end of this quarter saw our market position decline slightly. We believe the decline *was due to the one-time acquisition related volume incentives paid to the owners of our competitor.* From what we understand these volume incentives ended in May of 2004 around the one year anniversary of the acquisition. Once this short-term effect has passed we expect our market position to improve.

Defendant Lutnick reaffirmed second quarter guidance of operating earnings of $0.19 to $0.20 per share.  Giving no indication of any problems on the horizon, the Company made

positive statements about its market position and predicted that its proprietary trading products

would cause trading volumes to increase:

> Now, let's update our product enhancements and some of our new
> product initiatives. Price improvement usage continued to grow in
> the first quarter. We estimate that more than 20% of our trades
> contained some degree PI in the first quarter '04 and now over 30%
> of our users are using price improvement regularly. Better Fill,
> which is our trading through the stack functionality facilitates
> execution at multiple prices while respecting the exclusive time of
> current traders. It allows for execution against limit orders in the
> book behind the best bid and offer without waiting for a current
> trade to clear. Geared toward program and high volume traders
> Better Fill offers enhanced trading execution, increased efficiency
> and better trading opportunities to our customers. We are rolling
> out Better Fill to our customers this week and we will continue to
> roll out over the balance of the second quarter. As with PI we
> expect trading volumes to increase as more and more customers
> become comfortable with the new software and begin to rely on
> this proprietary trading tool. As adoption of this innovative product
> catches on we expect eSpeed's profitability and market position to
> grow. In the often run and when issued, the advent of Better Fill
> enhances our contingent order software. We now have a superior
> set of technological tools in place to build liquidity, in the often run
> and when issued markets...

33.    On May 10, 2004, the Company issued a press release announcing the interim

appointment of Jay Ryan as Chief Financial Officer, replacing Jeffrey Chertoff who was

resigning to "pursue other opportunities." The press release stated in relevant part:

> eSpeed has experienced tremendous growth since its inception, and
> we believe our future growth into new products and services is best
> served with a CFO who is exclusively responsible for the
> Company's financial operations. We are fortunate to have an
> experienced and accomplished financial manager of Jay Ryan's
> caliber join our executive team in the interim," said Chairman and
> CEO Howard W. Lutnick. He added, "We'd like to sincerely thank
> Jeff for his work and contributions over the past two years, and
> wish him the best in his future endeavors."

34.     On March 11, 2004, eSpeed shares closed at $18.75, up from their March 10 close of $ 7.58, on volume of 584,000 shares.

B.     eSpeed's Share Price Collapses as the Market Revalues the Company in Light of its Newly-Revealed Loss of Market Share and Fungibility of its Products.

35.     On July 1, 2004 the Company issued a press release admitting that, notwithstanding its reassuring statements and reaffirmation of its 2Q 2000 guidance less than two months before, eSpeed's business was not progressing as previously represented and it would miss the range of earnings projected in its previous guidance. The Company announced that for the quarter ended June 30, 2004, it expected to report net income in the range of $0.15 to $0.16, down from the $0.19-$0.20 per share guidance it had reaffirmed as recently as May 3, 2004.

36.     Defendant Lutnick explained the completely unexpected earnings shortfall as follows:

> Our weaker than expected performance during the second quarter was due to erosion of our market position from competitive pricing pressure and lower than expected market volumes in Europe. We are proactively addressing our market position, by offering tailored and flexible solutions that have the effect of driving down the marginal costs of trading on eSpeed. We are focusing on a revenue growth strategy that offers our customers the combination of variable and fixed commissions and value-added trading tools.

37.     The market reacted swiftly to eSpeed's about-face. On July 1, 2004, the next trading day, the share price dropped 25 percent, from $17.46 to $13.01 on volume of over 6 million shares. The drop continued on July 3, 2004, as the stock fell to $11.39 a share on volume of 2.8 million shares.

38.     In an analyst conference on July 2, 2004, defendant Lutnick represented that the downturn in the Company's revenues and earnings for the second quarter of 2004 was principally

15

attributable to a special deal that ICAP had with customers, which capped those customers' costs

at fairly low trading level and then allowed them to trade for free.  As a result, ICAP took trading

volume from eSpeed.  Defendant Lutnick reiterated that this special deal with ICAP customers

had  expired, and therefore it would not affect eSpeed in the future.

> With respect to our market share, as we mentioned on our last
> conference call, during the second quarter, we were impacted by
> one-time acquisition related volume incentives paid to the former
> owners of our competitor. These incentives had a greater impact
> than we anticipated in May and although our market share
> improved in June, we were still below our expectation. Also during
> the second quarter, we saw lower-than-expected market volumes in
> Europe. This market softness impacted our voice revenue and
> associated volumes and earnings

39.    In the aftermath of the analyst conference on July 2, 2004, CBS Marketwatch

reported that analysts were unconvinced that eSpeed's explanations made sense, in light of the

fact that **bond trading volumes had not dropped, and had actually risen during 2Q 2004**

even as eSpeed's market position eroded.   The article stated in relevant part:

> If eSpeed is to fight off rivals in electronic bond trading, Chairman
> and Chief Executive Howard Lutnick must find a way to grow the
> company's market share without trimming profits, analysts said
> Friday.
>
> "At this point, it's a problem in search of a solution," according to
> Jeffries and Co. analyst Charlotte Chamberlain.
>
> The company, a pioneer in electronic bond trading, warned
> Thursday that it's losing market share at an alarming rate amid a
> price war with competitor ICAP BrokerTec.
>
> What's more, Lutnick's attempt to calm investors' distress appeared
> to fall on deaf ears, as eSpeed (ESPD) shares slipped more than 25
> percent Friday.

* * *

Lutnick, who is also chairman and chief executive of Cantor Fitzgerald, frustrated some analysts in a conference call Friday, saying he failed to lay out a feasible plan to aggressively compete with ICAP on pricing and product offerings.

He declined to give any estimates for Treasury bond issuance next year -- despite the fact that Cantor has an extensive research department dedicated in large part to estimating new issuance, the bread and butter of the two businesses.

* * *

The profit warning came despite the fact that bond trading volumes during the quarter were strengthening, and even with some analysts expecting a drop in market share, they expected the growing market to justify earnings expectations.

40      The statements set forth in paragraphs 24 through 33 were materially false and misleading when made, because, contrary to defendant's representations:

a.      eSpeed was not successfully competing with ICAP;

b.      eSpeed's market share was declining;

c.      eSpeed's products (which it had touted as uniquely innovative) were increasingly fungible and subject to price competition; and

d.      eSpeed's pricing model was not succeeding in responding to market conditions, and in fact was driving customers to ICAP, the Company's principal competitor.

## SCIENTER ALLEGATIONS

41    As alleged herein, defendants acted with scienter in that defendants knew that the

public documents and statements issued or disseminated in the name of the Company were

materially false and misleading; knew that such statements or documents would be issued or

disseminated to the investing public, and knowingly and substantially participated or acquiesced

in the issuance or dissemination of such statements or documents as primary violations of the

federal securities laws.

42.    Defendants knew and/or recklessly disregarded the falsity and misleading nature

of the information that they caused to be disseminated to the investing public.  The ongoing

fraudulent scheme described in this Complaint could not have been perpetrated over a substantial

period of time, as has occurred, without the knowledge and complicity of the personnel at the

highest level of the Company, including the Individual Defendants.

43.    In addition, the Individual Defendants had substantial financial motives to conceal

the omitted material facts alleged in ¶ 40, supra, including as follows: Defendant Amaitis sold

63,750 shares of eSpeed stock on or about December 12, 2003 at the price of $23.14, for

proceeds of $1,475,175, reducing his holdings in eSpeed shares to 128,512 shares, exercised

options on 93,750 eSpeed shares at a strike price of $5.10 per share on or about December 12,

2003 (thereby generating a profit of over $1.3 million based on eSpeed's then-prevailing market

price), and sold 25,000 shares of eSpeed stock on or about December 15, 2003, at the market

price of $23.95, for proceeds of $598,750.   Defendant Lutnick, between September 19, 2003 and

March 26, 2004, disposed of (in non-market transactions, whose nature is as yet unknown to

18

Plaintiff) over 1.5 million shares of eSpeed stock, worth at least $25 million at then-prevailing market prices.

## EFFICIENT MARKET ALLEGATIONS

44.     Plaintiff and the Class herein will rely, in part, on the efficient market hypothesis and the "fraud on the market" doctrine.  At all relevant times, the market for eSpeed securities was an efficient market for the following reasons, among others:

(a)     eSpeed stock met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b)     As a regulated issuer, eSpeed filed periodic public reports with the SEC and the NASDAQ;

(c)     eSpeed regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major news wire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

(d)     eSpeed was followed by several securities analysts employed by major brokerage firms who wrote reports which were distributed to the sales force and certain customers of their respective brokerage firms

45.     As a result of the foregoing, the market for eSpeed securities promptly digested current information regarding eSpeed from all publicly-available sources and reflected such information in eSpeed stock price.  Under these circumstances, all purchasers of eSpeed securities during the Class Period suffered similar injury through their purchase of eSpeed securities at artificially inflated prices and a presumption of reliance applies.

## NO SAFE HARBOR

46.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this complaint. Many of the specific statements pleaded herein were not identified as "forward-looking statements" when made.  To the extent there were any forward-looking statements, there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.  Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the particular speaker knew that the particular forward-looking statement was false, and/or the forward-looking statement was authorized and/or approved by an executive officer of the Company who knew that those statements were false when made.

## AS AND FOR A FIRST CAUSE OF ACTION FOR VIOLATION OF SECTION 10(b) OF THE SECURITIES EXCHANGE ACT

### (Against Defendants eSpeed, Lutnick and Amaitis)

47.     Plaintiff repeats and realleges each and every allegation contained above as though fully set forth herein.

48.     During the Class Period, defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and

20

other members of the Class to purchase eSpeed securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set forth herein.

49.    Defendants (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for eSpeed securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

50.    Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the business, operations and future prospects of eSpeed as specified herein.

51.    These defendants employed devices, schemes, and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of eSpeed value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about eSpeed and its business operations and future prospects in the light of the circumstances under which they were made, not mislead-ing, as set forth more particularly herein, and engaged in transactions, practices and a course of

21

business which operated as a fraud and deceit upon the purchasers of eSpeed securities during the Class Period.

52.    The defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing eSpeed's operating condition and future business prospects from the investing public and supporting the artificially inflated price of its securities.

53.    As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of eSpeed securities was artificially inflated during the Class Period. In ignorance of the fact that market prices of eSpeed publicly-traded securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by defendants, or upon the integrity of the market in which the securities trades, and/or on the absence of material adverse information that was known to or recklessly disregarded by defendants but not disclosed in public statements by defendants during the Class Period, Plaintiff and the other members of the Class acquired eSpeed securities during the Class Period at artificially high prices and were damaged thereby.

54.    At the time of said misrepresentations and omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true. Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that eSpeed was experiencing, which were not disclosed by defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their eSpeed securities, or, if they

had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

55.    By virtue of the foregoing, defendants have violated Section 10(b) of the Exchange Act, and Rule 10b-5.

56.    As a direct and proximate result of defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

## AS AND FOR A SECOND CAUSE OF ACTION FOR VIOLATION OF SECTION 20(a) OF THE SECURITIES EXCHANGE ACT

### (Against Defendants Lutnick, Amaitis CFS, CFLP and CFGMI)

57.    Plaintiff repeats and realleges each and every allegation contained above as though fully set forth herein.

58.    Defendants Lutnick and Amaitis acted as a controlling persons of eSpeed within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions, and knowledge of the Company's operations and knowledge of the false statements disseminated to the investing public, Defendants Lutnick and Amaitis had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading. Defendants Lutnick and Amaitis had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by

Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

59.    Defendants CFS, CFLP and CFGMI acted as controlling persons of the Company. By virtue of their ownership and/or voting control of stock sufficient to elect the eSpeed Board, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

60.    As set forth above, Defendants eSpeed, Lutnick and Amaitis each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint.  By virtue of their positions as controlling persons, Defendants Lutnick, Amaitis, CFS, CFLP, and CFGMI are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## JURY TRIAL DEMANDED

61.    Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a)    Determining that this action is a proper class action, designating Plaintiff as Lead Plaintiff and certifying Plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and Plaintiff's counsel as Lead Counsel;

24

(b)    Awarding compensatory damages in favor of Plaintiff and the other Class

members against all defendants, jointly and severally, for all damages sustained as a result of

defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)    Awarding Plaintiff and the Class their reasonable costs and expenses incurred in

this action, including counsel fees and expert fees; and,

(d)    Granting such other and further relief as to the Court may seem just and proper.

Dated:        New York, New York
              March 4, 2005

                        LAW OFFICE OF
                        CHRISTOPHER J. GRAY, P.C.

                        By: _____
                           Christopher J. Gray (CG 0334)
                        460 Park Avenue, 21ST Floor
                        New York, New York 10022
                        (212) 838-3221

                        LOUIS F. BURKE, P.C.
                        Louis F. Burke (LB 4686)
                        460 Park Avenue, 21ST Floor
                        New York, New York 10022
                        (212) 682-1700

                        *Attorneys for Plaintiff Susan Zellick*

### PLAINTIFF'S CERTIFICATE

The undersigned ("Plaintiff"), declares, as to the claims asserted under the federal securities laws, that:

1. Plaintiff has reviewed the complaint against eSpeed, Inc., and certain other defendants, and authorizes its filing.

2. Plaintiff did not acquire the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action or any other litigation under the federal securities laws.

3. Plaintiff is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary.

4. Plaintiff represents and warrants that it is fully authorized to enter into and execute this certification though its undersigned managing partner.

5. Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as approved by the court.

6. Plaintiff has made no transaction(s) during the Class Period in the common shares of eSpeed, Inc., except those set forth below: (If you need more space please use the back of this form or attach an additional page.)

| Purchases | | | | Sales | | |
|-----------|-----------|-------|--|-----------|-----------|-------|
| Date(s) | Number of Shares | Price | | Date(s) | Number of Shares | Price |
| 3/26/04 | 250 | 20,079 | | 12/29/04 | 250 | 12,631 |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

7. During the three years prior to the date of this Certification, Plaintiff has not sought to serve or served as a representative party for a class in an action filed under the federal securities laws.

8. I declare under penalty of perjury, this 23 day of February , 2005 that the information above accurate.

Print Name:     Susan Zellick

Signature*:     Susan J Zellick

*If you are signing this Certification on behalf of a company or other entity, please sign your name, and print the name of the company or entity above your signature.

### ADDITIONAL INFORMATION

Address:     1931 Divide Rd

City, State and Zip:     Lewistown, MT 59457

Phone Number (Day):     406·538·7450

Phone Number (Evening):     406-538-2035

Email Address:     szellick@tein.net

Circle: Yes or No    Are you a former employee of eSpeed, Inc.?

Circle: Yes or No    Are you a current employee of eSpeed, Inc.?